# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Herb L. Felton,
      Petitioner

    vs                              Case No. C-1-01-488
                                           (Spiegel, J.; Hogan, M.J.)

James Haviland,[1]
      Respondent

---

## REPORT AND RECOMMENDATION

---

Petitioner, a prisoner in state custody who is currently incarcerated at the Southern Ohio Correctional Facility in Lucasville, Ohio, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's "Answer," as well as the record of the challenged state criminal proceedings provided by respondent. (*See* Docs. 1, 3, 5-6).

### Factual And Procedural Background

On June 8, 1999, petitioner was indicted by the Hamilton County, Ohio, grand jury on one count of felonious assault as defined in Ohio Rev. Code § 2903.11(A)(2). (*See* Doc. 3, Ex. 2). After a trial before a jury, petitioner was found guilty as charged, and on December 2, 1999, was sentenced to a seven (7) year prison term. (*Id.,* Ex. 1).

---

[1] In the petition, petitioner correctly named Patrick Hurley, Warden of the Ross Correctional Institution (RCI), as respondent because petitioner was incarcerated at RCI at that time. However, petitioner is now incarcerated at the Southern Ohio Correctional Facility, where the current Warden is James Haviland. (*See* Doc. 7). Because James Haviland is the individual who now has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

With the assistance of counsel, petitioner filed a direct appeal to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error, which are quoted verbatim from his appellate brief:

**First Assignment Of Error:**  Prior counsel was ineffective when he disclosed to the trial court an allegation that the defendant had threatened trial counsel; trial counsel was ineffective in not requesting a lesser included instruction of aggravated assault; trial counsel was ineffective in not requesting that the court investigate whether two jurors were sleeping and/or one juror was sick during critical portions of the trial.

**Second Assignment Of Error:**  The trial court erred to the prejudice of the defendant-appellant by allowing the jury to convict him when the verdict was against the weight of the evidence.

**Third Assignment Of Error:**  The trial court erred to the prejudice of the defendant by sentencing him to seven years in the penitentiary.

**Fourth Assignment Of Error:**  The court erred to the prejudice of the defendant by not giving the proper jury instructions.

(*Id.*, Ex. 3).  On September 27, 2000, the Court of Appeals issued a Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment. (*Id.,* Ex. 5).

Proceeding pro se, petitioner filed a notice of appeal and memorandum in support of jurisdiction with the Ohio Supreme Court, raising the following three propositions of law: (1) "[d]efendant-appellant was denied his Sixth Amendment right to counsel[;]" (2) "[d]efendant-appellant was denied his constitutional rights of due process in regard to the sentencing[;]" and (3) the "court of appeals erred in determining the proper jury instructions were given." (*Id.,* Exs. 6, 7).  On January 24, 2001, the Ohio Supreme Court issued an Entry declining jurisdiction to hear the case and dismissing the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 9).

Petitioner filed the instant petition for writ of habeas corpus on July 23, 2001, alleging the following grounds for relief, which are quoted from the petition as follows:

**Ground One:** Trial court erred by allowing the jury to convict when verdict was against the weight of the evidence.

**Ground Two:** Defendant/Petitioner was denied his Sixth Amendment Right to Counsel.

**Ground Three:** Petitioner was denied constitutional rights of due process regarding the sentence imposed.

**Ground Four:** Improper jury instructions were provided.

(Doc. 1, pp. 5-6).

Without waiving the statute of limitations defense, respondent concedes in his Answer, and it appears from the record, that the petition is not subject to dismissal on statute of limitations grounds. (*See* Doc. 3, Brief, p. 9). Moreover, it appears petitioner has exhausted all available state remedies. Therefore, the Court will proceed to address each of petitioner's grounds for relief in light of the arguments asserted by respondent in his Answer.

## OPINION

### A. Petitioner Has Waived The Weight Of Evidence Claim Alleged In Ground One, Which In Any Event Is Not Cognizable In This Federal Habeas Proceeding, Due To His Procedural Default In The State Courts

In Ground One of the petition, petitioner alleges his conviction should be reversed because the jury's verdict was "against the weight of the evidence." (*See* Doc. 1, p. 5; Memorandum In Support Of Application, pp. 2-10). Respondent asserts that petitioner has waived this claim, which otherwise is not cognizable in this federal habeas corpus proceeding, because he failed to present it to the Ohio Supreme Court on appeal from the Ohio Court of Appeals' direct appeal decision. (Doc. 3, Brief, pp. 9-11).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional

3

claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present a claim through the appropriate channels to the state's highest court or commits some other procedural default relied on to preclude review of the merits of the claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue relief in the state courts, the claim is subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had a claim considered by the state's highest court and he can no longer present such claim to the state courts, he has waived the claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner presented the "weight of evidence" claim to the Ohio Court of Appeals on direct appeal from his conviction. (*See* Doc. 3, Ex. 3, pp. 7-8). However, he did not raise the claim in his memorandum in support of jurisdiction to the Ohio Supreme Court when he sought leave to appeal the Ohio Court of Appeals' direct appeal decision. (*See id.,* Ex. 7). Petitioner committed a procedural default when he did not present the claim alleged in Ground One to the state's highest court. Therefore, the Court concludes petitioner has waived the ground for relief absent a showing of "cause" and "prejudice" or that a fundamental miscarriage will occur if the claim is not addressed on the merits. *See supra* p. 4. Petitioner has not provided any explanation as "cause" for his procedural default in order to counter respondent's argument asserted in the Answer that the claim is waived. Petitioner also has not demonstrated that a fundamental miscarriage of justice will occur if the underlying

merits of the claim are not addressed by this Court. A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). No such showing has been made in this case.

In any event, as respondent points out (Doc. 3, Brief, pp. 10-11), petitioner's claim that the verdict was against the weight of the evidence does not allege a constitutional violation which may be remedied in this proceeding. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 68 (1991). A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. *See* 28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41. Petitioner argued the issue to the Ohio Court of Appeals only in terms of the state-law "manifest weight of evidence" standard set forth in the cited case, *State v. Martin,* 485 N.E.2d 717, 720 (Ohio Ct. App. 1983). (*See* Doc. 3, Ex. 3, pp. 7-8). No constitutional argument has been made that petitioner's conviction is based on insufficient evidence in violation of the due process standards enunciated by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979). Therefore, petitioner is not entitled to habeas relief based on his non-cognizable, state-law claim that the verdict was against the weight of the evidence.

Accordingly, in sum, the Court concludes that petitioner is not entitled to habeas relief based on the "weight of evidence" claim alleged in Ground One because (1) he has waived the claim due to his procedural default in failing to raise it to the state's highest court; and (2) in any event, the claim, which alleges a violation of state law only, does not state a claim of error under federal due process standards that may be remedied in this federal habeas corpus proceeding.

**B.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Two Of A Denial Of His Sixth Amendment Right To Counsel**

In Ground Two of the petition, petitioner claims he was denied his Sixth Amendment right to counsel based on the following three incidents that allegedly occurred at trial: (1) an attorney hired to represent petitioner "had ex parte discussions with the judge and accused Petitioner of threats against the attorney;"[2] (2) a "second attorney" appointed by the court to represent petitioner "held numerous ex parte discussions with the judge advising him of conversations ... with Petitioner" and then "unexpectedly withdrew" from the case "and apparently made off-the-record charges against Petitioner" when petitioner "insisted on a trial;"[3] and (3) yet another attorney who represented petitioner at trial provided ineffective assistance on "at least eleven" specified occasions during the trial proceedings.  (Doc. 1, p. 5; Memorandum In Support Of Application, pp. 10-16).

As an initial matter, although respondent does not raise a waiver defense, it appears that petitioner committed a procedural default in the state courts with respect to all but the following Sixth Amendment claims, which were the only ones he presented on direct appeal to the Ohio Court of Appeals: (1) corresponding to his first claim of error alleged in the petition, one of petitioner's attorneys prior to trial was ineffective when he improperly revealed to the court that petitioner had threatened him; and (2) corresponding to two of the alleged incidents of error committed by trial counsel in the third claim of error, petitioner's attorney at trial  provided ineffective assistance by failing to request a jury instruction on the lesser-included offense of aggravated assault and by failing to request that two jurors be questioned and investigated when it was brought to the court's attention that one juror was "obviously sick" and the other juror had been sleeping during the trial.  (*See* Doc. 3, Ex. 3, pp. 4-7).

It is well-settled that the Ohio Supreme Court will not consider issues a defendant fails to present to the Court of Appeals.  *See State v. Williams,* 364 N.E.2d 1364, 1367 (Ohio 1977) (and cases cited therein), *vacated on other grounds,* 438 U.S.

_____

[2]According to respondent, this attorney, Jonathon Dameron, was the second of four lawyers who represented petitioner in the criminal matter.  (*See* Doc. 3, Brief, p. 13).  Apparently, Dameron was removed from the case after both he and petitioner filed motions for his withdrawal as petitioner's counsel.  (*Id.*; *see also* Doc. 1, Memorandum In Support Of Application, pp. 10-11).

[3]Petitioner avers this "next" attorney was Perry Ancona, who filed a motion to withdraw from the case that was granted by the trial judge at a hearing held on November 9, 1999.  (Doc. 1, Memorandum In Support Of Application, p. 11).

911 (1978); *State v. Phillips,* 272 N.E.2d 347, 352 (Ohio 1971); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966).  The Ohio Constitution limits the Ohio Supreme Court's appellate jurisdiction to appeals from the Ohio Court of Appeals.  Ohio Const. art. IV, § 2(B)(2); *see Jones,* 211 N.E.2d at 199. Therefore, the Ohio Supreme Court lacks jurisdiction to consider the merits of constitutional claims that were not raised to the Ohio Court of Appeals.  *See id.; see also Leroy v. Marshall,* 757 F.2d 94, 99 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983).  Because petitioner presented only three of his specific claims of ineffective assistance alleged in Ground Two to the Ohio Court of Appeals on direct appeal, and thus failed to provide the highest state court in Ohio with an opportunity to correct the other remaining constitutional errors allegedly committed by the various attorneys representing him during the trial proceedings, *see Leroy,* 757 F.2d at 99, a strong argument can be made that absent a showing of cause and prejudice or a fundamental miscarriage of justice, petitioner has waived the ineffective assistance of counsel claims that were not presented on direct appeal to the Ohio Court of Appeals. Nevertheless, because respondent has not asserted a waiver argument with respect to these ineffective assistance of counsel claims and petitioner, therefore, has not been given an opportunity to defend against such an argument, the Court will address all of the ineffective assistance of counsel claims presented by petitioner in the instant habeas corpus action.

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), established in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state courts' adjudication of his claims resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).  A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

7

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal habeas court conducts a de novo review instead of applying the AEDPA standard of review set forth in § 2254(d). *Maples v. Stegall,* 340 F.3d 433, 436-37 (6th Cir. 2003) (relying on the Supreme Court's recent decision in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), wherein the Court conducted a de novo review of the portion of petitioner's claim not considered by the state courts, without applying the AEDPA's standard of reasonableness or giving any deference to the state courts); *see also Davis v. Secretary for Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003). *Cf. Wynne v. Renico*, _ F.Supp.2d _, No. 01-10247-BC, 2003 WL 22054238, at *12 (E.D. Mich. Sept. 2, 2003) (to be reported) (while acknowledging that *Maples* and *Wiggins* call for a de novo review and not the more deferential AEDPA review, the district court considered a constitutional claim, which the state court had not directly addressed, under the more-stringent-for-petitioner AEDPA standard in light of its ultimate holding that petitioner was entitled to habeas relief based on that claim).

In this case, the Ohio Court of Appeals was the only state court to address the merits of the ineffective assistance of counsel claims that were presented on appeal in the state courts. The court summarily rejected the three claims presented to it on the

ground that petitioner had "not demonstrated that his trial counsel's performance was deficient or that he was prejudiced by counsel's performance" under the standard established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). (*See* Doc. 3, Ex. 5, p. 1). The state appellate court correctly identified and utilized the proper standard of review enunciated in *Strickland*. As the court recognized, to establish a constitutional claim of ineffective assistance within the meaning of *Strickland,* petitioner must show both: (1) his attorneys made such serious errors that they were not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorneys' deficient performance prejudiced the defense by undermining the reliability of the trial result. *See Strickland,* 466 U.S. at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsels' representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsels' performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsels' perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsels' performance was deficient, the Court must indulge a strong presumption that counsels' conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsels' errors, the result of the trial would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the decision reached by the trier of fact would "reasonably likely have been different absent the errors." *See id.* at 695.

The Court need not examine the question of whether counsels' performance was deficient before addressing the question of whether petitioner was prejudiced by counsels' performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *See id.* at 697.

In this case, petitioner first challenges attorney Dameron's purported "ex parte" conversations with the trial judge, wherein the judge was informed that petitioner had threatened Dameron. It is undisputed that both Dameron and petitioner sought Dameron's removal as petitioner's counsel in the case. A hearing was held on October 26, 1999, which apparently was the date the matter was set for jury trial. (*See* Doc.

3, Ex. 12).  At the hearing, when asked by the court whether he was "ready to proceed" to trial, Dameron responded as follows:

> Judge, I am prepared to go forward, but Mr. Felton has filed a motion to have me withdrawn.  And so he wants me to be withdrawn, and I would prefer to be withdrawn as well.  Yesterday he came into my office and threatened me, and I had to call the police on him.  For that reason, I don't feel like I can do an adequate job, a fair job, of representing him.

(*Id.,* Tr. 2).  The colloquy between Dameron, the court and petitioner continued in relevant part as follows:

> THE COURT: Okay.  Just so I have this straight.  I know you talked earlier.  You indicated to me, and I've known you now for a while, that you felt the need to call the police because of what he said to you?
>
> MR. DAMERON: Yes, sir.
>
> THE COURT: Okay.  All right.  Thank you.  Mr. Felton, sir, did you want to say anything?
>
> DEFENDANT FELTON: Just that, ever since I let Jonathon Dameron know he's not an effective assistance of counsel, he's been calling me names, he refused to give me the transcripts which I paid for, and then ... then he called the police on me.  He's just really turned into a monster, a bad person.
>
> THE COURT: He turned into a monster?
>
> DEFENDANT FELTON: Yes.  He probably already was.  I just didn't know.
>
> THE COURT: Okay.  All right.  Anything else, Mr. Dameron?
>
> MR. DAMERON: No, sir.
>
> THE COURT: Thank you.

****

. . .Well, Mr. Dameron, I would certainly respect your opinion. I'm not exactly sure who I'm granting this on behalf of. If you indicate to me you can't go forward, that's good enough for me. I will allow you at this point, to withdraw. Would you prefer that, or p[re]fer that I grant the motion to –

MR. DAMERON: It doesn't matter who you grant. I think we both want it. Mr. Felton does not want me, and I don't want to represent him, so.

THE COURT: If you don't want to represent him, I'll do it that way. Grant your motion to withdraw. We'll go from there.

(*Id.,* Tr. 3-5). Thereafter, on petitioner's representation that he had no funds to hire an attorney, the court stated it would "go ahead" and appoint new counsel for petitioner and revoked petitioner's bond as "the only appropriate thing to do." (*Id.,* Tr. 5-6). At the close of the hearing, before adjourning from the bench, the court warned petitioner: "Let me tell you, if another attorney comes back to me, indicates, sir, you were anything but civil to them, I will take that into consideration, and I will do what I need to do." (*Id.,* Tr. 8).

The record does not reflect, as petitioner asserts, that Dameron engaged in any improper "ex parte" communications with the trial judge prior to the hearing. Indeed, it appears that the judge began the proceedings on October 26, 1999 under the impression that the case was ready to go forward to trial that day. After he heard Dameron's request to withdraw based on an incident that had occurred the previous day, the judge made the general comment "I know you talked earlier. You indicated to me . . . that you felt the need to call the police because of what he said to you?" (*Id.,* Tr. 3). These remarks are simply too vague to establish that Dameron "talked earlier" with the judge or, even if he did so, that such contact was other than in a proper meeting "in chambers" with counsel, particularly given that Dameron's request to withdraw appears to have been made at the brink of trial after numerous other continuances had been entered in the case. (*See* Doc. 3, Ex. 11). Petitioner was present at the October 26, 1999 hearing and heard Dameron's reasons for wanting to be removed as petitioner's counsel. Petitioner was given an opportunity at the hearing to respond to and, therefore, challenge the factual accuracy of Dameron's allegations before the court issued its ruling in the matter. Petitioner, therefore, cannot argue now

11

that the court's ultimate decision permitting Dameron to withdraw and revoking petitioner's bond was based on "unsubstantiated" or "unverified" allegations that petitioner had no opportunity to refute. (*See* Doc. 1, Memorandum In Support Of Application, pp. 10-11).

In addition, contrary to petitioner's contention, petitioner's Sixth Amendment right to counsel was not violated by Dameron's stating to the court his reasons for seeking withdrawal from the case. Dameron did not reveal to the court the substance of the threat petitioner purportedly made to him, which caused him to call the police; nor did he provide any further arguably inflammatory information to the court regarding his altercation with petitioner the previous day. In the numerous cases researched by this Court involving similar if not more egregious disclosures by counsel, no argument or suggestion was made by any party or by the reviewing courts that defense counsel engaged in any impropriety, much less acted outside the wide range of reasonable professional assistance, in revealing to the trial court that petitioner's threats, assaults or other hostile conduct towards him constituted the reason he was seeking withdrawal from the case. *See, e.g., United States v. Thompson,* 335 F.3d 782, 784 (8th Cir. 2003) (defense counsel disclosed in motion to withdraw that the defendant threatened to kill him); *Gilchrist v. O'Keefe,* 260 F.3d 87, 90 (2nd Cir. 2001) (defense counsel informed the court in his motion to withdraw that petitioner had punched him in the ear and ruptured his eardrum during a meeting in a courthouse holding cell), *cert. denied,* 535 U.S. 1064 (2002); *United States v. McLeod,* 53 F.3d 322, 323, 325 (11th Cir. 1995) (in hearing on defense counsel's motion to withdraw, at which the defendant was present and given the opportunity to provide testimony, counsel testified in presence of trial judge that the defendant was "verbally abusive and threatened to harm him," had "repeatedly threatened to sue him, and had asked him to engage in [unethical] conduct"); *State v. Boykin,* 478 S.E.2d 689, 689-90 (S.C. Ct. App. 1996) (in his motion to withdraw, defense counsel provided a detailed description of the incident giving rise to the motion, which involved verbal abuse and physical threats by his client). Indeed, in this line of cases, the courts have unanimously indicated that "a defendant who is abusive toward his attorney may forfeit his right to counsel" all together. *See, e.g., Thompson,* 335 F.3d at 785 (holding that defendant had forfeited his right to counsel on appeal after his first attorney on appeal was allowed to withdraw based on his undisputed allegation that defendant had threatened to kill him); *Gilchrist,* 260 F.3d at 93-100 (affirming denial of federal habeas relief to petitioner challenging the state trial court's ruling that he had forfeited his right to counsel during sentencing as a result of his attack on trial counsel, who was allowed to withdraw from the case prior to sentencing based on that incident); *McLeod,* 53 F.3d

at 325-26 (holding that defendant had forfeited his right to have an attorney appointed to represent him at a hearing on his motion for new trial, in light of the unrefuted testimony by his trial counsel, who was permitted to withdraw, that defendant had been "repeatedly abusive, threatening and coercive" towards him); *United States v. Thomas,* 220 F.Supp.2d 430, 436-38 (W.D. Pa. 2002) (holding that the defendant's threat of physical violence to his fourth appointed attorney amounted "to the kind of outrageous conduct" that was sufficient to find a forfeiture of the defendant's Sixth Amendment right to counsel); *United States v. Travers,* 996 F.Supp. 6, 16-17 (S.D. Fla. 1998) (holding that defendant had forfeited his right to counsel based on 20 months of his being "persistently abusive, threatening and coercive in his dealings with court appointed counsel"); *Boykin,* 478 S.E.2d at 691-92 (although the court found that the "single incident" alleged by defense counsel justified only counsel's withdrawal from the case, and not the forfeiture of defendant's right to have substitute counsel appointed, the court acknowledged that a finding of forfeiture is warranted in certain circumstances).

In this case, the trial judge appointed substitute counsel to represent petitioner upon Dameron's withdrawal from the case. Therefore, the draconian result of forfeiture of right to counsel did not occur, which arguably might give rise to the claim that petitioner was entitled to effective assistance of counsel at the forfeiture proceeding. *Cf. King v. Superior Court of Sacramento County,* 132 Cal.Rptr.2d 585, 591, 600-01 (Cal. Ct. App. 2003) (holding that forfeiture of right to counsel was not appropriate in case where the defendant was denied effective assistance of counsel at the forfeiture proceeding because defense counsel, who "nominally" served as the defendant's attorney in such proceeding, "not only failed to represent [the defendant's] interests, but actively argued against him and in favor of forfeiture"). The state appellate court in *King* reasoned that "while counsel remains defendant's attorney, he owes defendant a duty of loyalty," which is violated by offering evidence at a forfeiture proceeding of the defendant's "violent behavior" that was obtained in his position as the defendant's counsel. *Id.* at 601. In so reasoning, however, the court pointedly distinguished the situation involved here of defense counsel seeking only to withdraw from the case. Specifically, the court stated:

> A defense counsel who represents a defendant who is violent and threatening towards counsel is placed in a difficult position. *Certainly counsel may move to withdraw and advise the trial court of the reasons for withdrawal.*

13

*Id.*

The United States Supreme Court has not addressed the precise issue at hand, but its reasoning in *Nix v. Whiteside,* 475 U.S. 157 (1986), is relevant. In *Nix,* the Supreme Court held that a criminal defendant's Sixth Amendment right to effective assistance of counsel is not violated when defense counsel refuses to cooperate with the defendant in presenting perjured testimony at his trial. *Id.* at 175. The Court found that a defendant is not deprived of his right to counsel when defense counsel takes "steps to persuade [him] to testify truthfully, *or to withdraw*," stating that "[w]hen an accused proposes to resort to perjury or to produce false evidence, one consequence is the risk of withdrawal of counsel." *Id.* at 173 (emphasis added). The Court further found "no breach of professional duty" in defense counsel's disclosing his client's perjury to the court. *Id.* at 174. The Court reasoned:

> A defendant who informed his counsel that he was arranging to bribe or threaten witnesses or members of the jury would have no "right" to insist on counsel's assistance or silence. Counsel would not be limited to advising against that conduct. An attorney's duty of confidentiality, which totally covers the client's admission of guilt, does not extend to a client's announced plans to engage in future criminal conduct. . . . In short, the responsibility of an ethical lawyer, as an officer of the court and a key component of a system of justice, dedicated to a search for truth, is essentially the same whether the client announces an intention to bribe or threaten witnesses or jurors or to commit or procure perjury.

*Id.* The Court rejected the petitioner's final argument that his attorney held "conflicting loyalties," which under *Cuyler v. Sullivan,* 446 U.S. 335 (1980), does not require a showing of specific prejudicial effect in order to satisfy the "prejudice" prong of the *Strickland* test. *Nix,* 475 U.S. at 176. The Court stated:

> Here, there was indeed a "conflict," but of a quite different kind; it was one imposed on the attorney by the client's proposal to commit the crime of fabricating testimony without which, as he put it, "I'm dead." This is not remotely the kind of conflict of interests dealt with in *Cuyler.* . . . Even in that case we did not suggest that all multiple representations necessarily resulted in an active conflict rendering the representation constitutionally infirm. If a "conflict" between a client's proposal and counsel's ethical obligation gives rise to a presumption that counsel's

14

assistance was prejudicially ineffective, every guilty criminal's conviction would be suspect if the defendant had sought to obtain an acquittal by illegal means. . . .

*Id.*

It is conceded that in contrast to this case, *Nix* involved long-followed and accepted canons of ethics explicitly recognizing an exception to the attorney's duties of loyalty to his client and confidentiality when the client seeks to engage in conduct that the lawyer knows is criminal or fraudulent. *See id.* at 166-71. Nevertheless, the reasoning behind the Court's ruling in *Nix* is applicable to this case where Dameron, believing his ability to serve as petitioner's advocate had been compromised by petitioner's threatening behavior towards him, was under no duty to continue as petitioner's counsel and, indeed, had an ethical obligation to seek withdrawal from the case at that point. As in *Nix,* counsel seeking to withdraw as a result of a "conflict" imposed by petitioner–between serving as his client's zealous advocate and protecting himself from harm threatened by his client–also was under no duty to petitioner at that point to remain silent about his reasons for requesting to be removed on the day trial was scheduled to begin.

In any event, even assuming, *arguendo,* Dameron exceeded the bounds of reasonable professional conduct when he revealed to the trial court that petitioner had threatened him, petitioner has not demonstrated the outcome of the trial proceedings would "reasonably likely have been different absent the error[]." *See Strickland,* 466 U.S. at 695. Because petitioner was tried by a jury, the only possible prejudice that could have occurred would have been in the imposition of sentence by the trial judge who heard Dameron's disclosure. At the sentencing hearing, when informing petitioner of his right to counsel on appeal, the trial judge expressed concern about having to appoint an attorney to represent petitioner in light of his previous history with counsel. Specifically, the court stated:

> You have the right to have a notice of appeal timely filed on your behalf. I'll take care – we'll take care of appointing you an attorney.

> The record should reflect that Mr. Connelly stands here today as the fourth attorney for you. . . . Two who withdrew because of threats from you, one who had to call the police. I revoked your bond due to a failure to cooperate, threats against the attorney. And my concern for the safety of

the community, you were still left out.

(Doc. 6, Tr. 392).

Thereafter, the court moved on to discuss the factors it took into account in reaching its determination about the appropriate sentence to impose. The court stated:

> . . .You were convicted by a jury of felonious assault. And that at least three times, you hit a person with a deadly weapon, causing staples and stitches to three parts of that person's head, resulting in some type of disfigurement and a short stay in the hospital.
>
> In my opinion, . . . based upon me watching this trial twice, you in a sense sought him out and you attacked him. You obviously injured him severely, and walked away subsequent to that.
>
> In my opinion, you lied to the police. You lied badly in court two times on the stand, including the second trial, in which you added testimony alleging that [the victim] was involved in striking a small child, which you didn't happen to put in the first time you testified.
>
> I have seen from you, sir, absolutely no remorse whatsoever. This was not, in my opinion, a spur of the moment situation. In my opinion, you were driven to get this gentleman, and at the point that you thought it was an opportune time to get him, you did, and I think [the victim] is lucky you didn't kill him.
>
> You've been convicted of a felonious assault, a felony of the second degree. Presumption is prison is the appropriate sanction. In my opinion, prison is certainly appropriate. In my opinion, you deserve more than the minimum sentence, as the minimum sentence would demean the seriousness of the offense, and not adequately protect the public.
>
> ****
>
> Bottom line is, Mr. Felton, I think you're a dangerous man. I really think you're a dangerous man. I think I would be derelict in my duties to give you anything less than the following. You should not be on the streets, at

16

least for quite a while.

Sentence of the Court on the felonious assault will be seven years.

(*Id.,* Tr. 392-94).  It is clear from this record that the information disclosed by attorney Dameron was concerning to the trial court in terms of having to appoint new counsel to represent petitioner on appeal.  However, the information played no part in the sentencing determination, which appears to have been based on the seriousness of the felonious assault offense, which the court believed was deliberately carried out by petitioner, and petitioner's lack of remorse.

For the same reasons discussed above with respect to attorney Dameron, *see supra* pp. 10-17, this Court also rejects petitioner's second claim of error stemming from his "next" attorney's conduct in seeking to withdraw from the case.  The record is less developed with respect to this claim, which was not raised on direct appeal to the Ohio Court of Appeals and thus subject to de novo review.  *See supra* pp. 8-9; *Maples,* 340 F.3d at 436-37.  Petitioner contends that the attorney, Perry Ancona, maintained "ongoing communications with the trial court (at the court's request) regarding meetings held with the attorney's client."  (Doc. 1, Memorandum In Support Of Application, p. 11).  In support of this argument, petitioner cites the following statement made by the trial judge at the close of the October 26, 1999 hearing that resulted in attorney Dameron's removal as petitioner's counsel: "Let me tell you, if another attorney comes back to me, indicates, sir you were anything but civil to them, I will take that into consideration, and I will do what I need to do."  (Doc. 3, Ex. 12, p. 8).  This statement does not demonstrate as petitioner contends that the court ordered or engaged in "ongoing communications" on an ex parte basis with attorney Ancona about his contacts with petitioner.  Rather, the statement reflects only the court's warning to petitioner that if his next attorney were to report that petitioner had been uncivil to him, the court might have to take an unspecified action, arguably more drastic in nature, to remedy the problem.

The record before this Court does not include a copy of the transcript of the November 9, 1999 hearing, wherein Ancona apparently made and obtained a favorable ruling on his request to withdraw from the case.  Apparently, the request similarly stemmed from "threats" made by petitioner, but did not involve a call to the police. (*See* Doc. 6, Tr. 392).  As in the situation involving attorney Dameron, in granting Ancona's motion to withdraw, the trial court did nothing more drastic than appoint new counsel to represent petitioner at trial.  Petitioner has not argued or cited any evidence suggesting

17

that Ancona engaged in any impropriety that was more egregious than the alleged error committed by Dameron. Moreover, most importantly, as with Dameron, *see supra* pp. 15-17, it is clear from the record presented that the disclosures made by Ancona in support of his request to withdraw played no part in the determination of the sentence that was ultimately imposed by the trial court. Therefore, petitioner has not demonstrated that the outcome of the trial proceedings would "reasonably likely have been different absent the errors" allegedly committed by attorney Ancona. *See Strickland,* 466 U.S. at 695.

In his remaining claim of error under the Sixth Amendment, petitioner attacks the performance of the attorney who represented him during trial. Petitioner contends, as he did on direct appeal to the Ohio Court of Appeals, that his trial counsel was ineffective in failing to request a lesser-included offense instruction on aggravated assault and in failing to request that two jurors be questioned and investigated. (Doc. 1, Memorandum In Support Of Application, pp. 13-14). In addition, besides claiming generally that his trial counsel was "obviously inexperienced, lacked confidence, and was very uncomfortable" during the trial proceedings, petitioner cites the following eleven specific instances in which he was allegedly denied effective assistance by his trial attorney: (1) during voir dire, his trial counsel "unnecessarily advised" potential jurors that petitioner was a Jehovah's Witness; (2) his trial counsel should have, but failed to, assert objections on "several occasions;" (3) his trial counsel was "extremely inept" in questioning witnesses; (4) his trial counsel "bungled" the questioning of witness Weaver; (5) his trial counsel apparently did not place his jury instruction request on the record although advised to do so by the trial judge; (6)-(7) his trial counsel failed to assert or withdrew objections to "leading" lines of questioning by the prosecutor; (8) his trial counsel only objected to the prosecutor's questioning "related to mischaracterization of testimony;" (9) his trial counsel failed to adequately question witness Sharon Armstrong regarding counseling of petitioner; (10) his trial counsel "failed to note several glaring contradictions between the prior testimony and that given in this instance;" and (11) his trial counsel had insufficient time to adequately prepare for trial, which commenced six days after his appointment to the case. (*Id.,* pp. 15-16).

Petitioner has not demonstrated that the Ohio Court of Appeals' disposition of the two claims presented to it of ineffective assistance by his trial attorney amounted to an unreasonable application of the *Strickland* standard. First, petitioner has not shown that his trial counsel's failure to request that the jury be instructed on the "lesser included offense" of aggravated assault fell outside the wide range of reasonable professional assistance. In retrospect, it might have been advantageous to request a jury instruction

on aggravated assault. However, based on the present record, the Court is unable to conclude that it constituted an unreasonable trial strategy for counsel, without the benefit of hindsight, to choose to forego such an instruction in favor of seeking a full acquittal based on the defense of self-defense with respect to the more serious felonious assault charge, which was more difficult for the State to prove in light of the higher degree of intent required to establish the offense. *See, e.g., Whatley v. Wolfe,* No. C2-99-1198, 2000 WL 1456910, at *5 (S.D. Ohio Sept. 20, 2000) (Sargus, J.) (unpublished) (noting that "the failure to request a jury instruction on a lesser included offense is generally presumed to constitute a matter of trial strategy, not ineffective assistance of counsel") (citing *State v. Griffie,* 658 N.E.2d 764, 765 (Ohio 1996)); *see also Lewis v. Russell,* 42 Fed.Appx. 809, 810-11 (6th Cir. Aug. 16, 2002) (not published in Federal Reporter); *Johnson v. Morris,* 848 F.2d 191 (table), No. 87-3965, 1988 WL 50639 (6th Cir. May 23, 1988) (unpublished).

Second, petitioner has not shown that his trial counsel provided ineffective assistance by failing to request that two jurors be questioned and investigated as to whether they had paid attention to certain testimony presented at trial. Neither the trial court nor any person in attendance at trial brought this matter up as an issue at any point during the presentation of evidence before the jury, when the juror "misconduct" purportedly took place. In contrast, the record reflects that at the close of trial before deliberations began, the prosecutor, defense counsel and the trial court all thanked the jurors for their "attention" and "service" during trial. (*See* Doc. 6, Tr. 323, 333, 380-81). Only after petitioner's conviction by the jury did petitioner's mother come forward at the sentencing hearing with her observations to the effect that "during portions of the trial, there were only 11 people who were cognizant of what was going on, and sometimes only ten." (*Id.,* Tr. 387). After sentencing petitioner, the trial judge expressed his disagreement with petitioner's mother on this matter as follows:

> Finally, I will for the record, indicate that I disagree with some of the comments of your mother. I do not feel that you received anything less than an absolute fair trial, twice[.] Do not feel that the jurors did not pay attention as she indicated. And I think the record needs to at least have my opinion in regards to that. In fact, if I would have observed people sleeping, it would mean a mistrial. I did not observe that.

(*Id.,* Tr. 393-94). In light of this record, the Court gives little credence to the allegations made by petitioner's mother for the first time at petitioner's sentencing hearing, and concludes the Ohio Court of Appeals' rejection of petitioner's claim against his counsel

with respect to the two jurors was eminently reasonable.

Petitioner's remaining ineffective assistance of counsel claims, which were not presented to and thus were not addressed by the Ohio Court of Appeals, must be reviewed de novo without deference to the state appellate court's ruling. *See supra* pp. 8-9; *see also Maples,* 340 F.3d at 436-37. First, in the absence of any record or other factual support for such a claim, the Court rejects petitioner's vague and general assertion that his trial counsel was ineffective because he was "obviously inexperienced, lacked confidence and was very uncomfortable" during the trial proceedings. Upon review of the trial transcript, this Court further concludes petitioner has not shown that any of the specifically enumerated errors committed by his attorney during the presentation of witness testimony rose to the level of unreasonable professional conduct within the meaning of the Sixth Amendment, or, most importantly, prejudicially affected the outcome of the trial proceedings.

The Court rejects petitioner's claim of constitutional error stemming from his counsel's mentioning in the voir dire proceedings that petitioner was a Jehovah's Witness. In fact, it could easily have been part of counsel's trial strategy to bring this information out in order to subtly suggest to the jury that petitioner was not the type of person who would have engaged in the offense of violence charged against him. Moreover, it is clear from the jurors' reaction to counsel's question that such information about petitioner's religious affiliation had absolutely no prejudicial impact on their determination of petitioner's guilt or innocence in the case.

Finally, the Court concludes petitioner has not shown his trial counsel provided ineffective assistance because he had insufficient time to prepare a defense prior to the commencement of trial six days after his appointment to the case. The Sixth Amendment right to effective assistance of counsel "encompasses a guarantee of ... [the] right to [a] preparation period sufficient to assure minimum quality counsel." *United States v. Cordell,* 924 F.2d 614, 616 (6th Cir. 1991) (quoting *Wilson v. Mintzes,* 761 F.2d 275, 278 (6th Cir. 1985)). However, "there are no mechanical tests for determining the amount of time required for adequate preparation for trial in a criminal case." *Id.* (quoting *United States v. Wirsing,* 719 F.2d 859, 866 (6th Cir. 1983)). Rather, the question turns on whether the petitioner has been prejudiced based on a consideration of all the facts and circumstances in the case. *Id.*

Here, petitioner's trial counsel never indicated to the court, for example by way of a motion for continuance, that he lacked sufficient time to prepare for trial. *Cf. id.* at

20

617. Moreover, as petitioner's fourth counsel in the case, which had already gone through one prior trial proceeding, he "presumably had access to the fruits of [prior] counsel's earlier preparation efforts." *Id.* (quoting *United States v. Martin,* 740 F.2d 1352, 1361 (6th Cir. 1984)). In addition, petitioner has not made any showing of actual prejudice based on the limited amount of time replacement counsel had to prepare for trial after his appointment to the case. *Cf. id.* (finding that the time given the defendant's court-appointed replacement counsel of "fewer than ten days" to prepare for trial was not inadequate under the Sixth Amendment); *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987) (in case involving claim of attorney ineffectiveness based on a failure to investigate, where it is all too easy to hypothesize about "what might have been" if a different trial tactic had been adopted, the court held that petitioner's obligation to demonstrate prejudice cannot be met without a "comprehensive showing as to what the investigation would have produced"); *see also United States v. McMillan,* 606 F.2d 245, 248 (8th Cir. 1979).

Accordingly, in sum, the Court concludes that petitioner has not demonstrated he is entitled to habeas corpus relief based on the numerous ineffective assistance of counsel claims alleged in Ground Two of the petition because (1) the state courts' adjudication of the three claims presented to the Ohio Court of Appeals on direct appeal neither is contrary to nor involves an unreasonable application of the relevant, clearly established *Strickland* standard; and (2) petitioner's remaining claims, which were not presented to the Ohio Court of Appeals on direct appeal and thus have been subjected to de novo review by this Court, lack merit under *Strickland.*

**C. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Three That He Was Denied Due Process "Regarding The Sentence Imposed"**

In Ground Three of the petition, petitioner contends he was denied due process "regarding the sentence imposed" because in sentencing him, the trial judge (1) "took into consideration defamatory, unsubstantiated and unreliable information from one attorney who had been advised that his services were no longer wanted;" and (2) demonstrated his bias against petitioner and his predetermination of petitioner's sentence at the sentencing hearing. (Doc. 1, p. 6; Memorandum In Support Of Application, pp. 16-18).

On direct appeal to the Ohio Court of Appeals, petitioner did not allege a federal constitutional violation, but rather raised the claim in terms of a violation of the state-law

"abuse of discretion" standard.  Specifically, petitioner alleged the trial court abused its discretion by improperly considering "the fact that the Defendant-Appellant allegedly threatened his lawyer" and by failing to comply with state statutory guidelines requiring more specific findings than were given in imposing more than the minimum sentence. (*See* Doc. 3, Ex. 3, pp. 8-9).  The Ohio Court of Appeals, which was the only state court to address this claim on the merits, did not consider petitioner's contention that the trial judge had improperly considered the threats made by petitioner to his attorney.  (*See id.*, Ex. 5, p. 2).  The court, which considered only the claim of a violation of state statutory sentencing guidelines, ruled in relevant part as follows:

> The third assignment of error, which alleges that the trial court erred in sentencing Felton to more than the minimum sentence without making the appropriate findings, is overruled.

> The trial court stated that imposing the sentence would demean the seriousness of the offense and would not adequately protect the public.... The court also marked those same findings on the sentencing worksheet.
>> R.C. 2929.14(B) does not require that the trial court give reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence.

> We have reviewed the record, and we hold that it supports the sentence imposed by the trial court.

(*Id.*) (citation to state case omitted).

As an initial matter, petitioner's failure to present his challenges to his sentence as a federal due process issue to the Ohio Court Appeals raises a serious concern, which should have been asserted as a defense by respondent, that petitioner may have waived the constitutional claim due to his procedural default before the state appellate court. *See supra* pp. 6-7; *see also McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987) (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)) (in order to satisfy the "fair presentation" requirement set forth in 28 U.S.C. § 2254(b)-(c), petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law).  However, because respondent has not asserted or otherwise

22

presented the petitioner with the opportunity to respond to a waiver defense, the Court will address the merits of petitioner's claims.

First, the Court concludes that petitioner is not entitled to federal habeas corpus relief to the extent he seeks to challenge his sentence based on the state-law ground presented on appeal to the state courts that the trial court violated Ohio's sentencing statute by making insufficient factual findings in support of its decision to sentence petitioner to more than the minimum prison term. Such a claim presents an issue of state law only, which may not be addressed or remedied in this proceeding. *See supra* p. 5; *see also* 28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41; *Sneed v. Donahue,* 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that claim challenging aggregation of several sentences under state law "involves a matter of state law [that] is not cognizable in a federal habeas corpus proceeding").

The Court may consider only petitioner's allegations of due process violations by the trial court in rendering its sentencing decision. Because petitioner's constitutional claim was not addressed by the state courts, it will be reviewed de novo by the Court without deference to the state appellate court's decision. *See supra* pp. 8-9; *Maples,* 340 F.3d at 436-47.

As a general matter, even an "unduly severe" sentence imposed within the statutory maximum set by statute does not in itself constitute a due process violation. *Townsend v. Burke*, 334 U.S. 736, 741 (1948)*; cf. Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000) (sentence imposed within the limits set by statute generally does not constitute "cruel and unusual punishment" within the meaning of the Eighth Amendment). Here, petitioner does not contend that his sentence exceeded statutory limits; nor does he, or could he successfully, even argue that his sentence is "unduly severe" given the seriousness of the felonious assault offense he was convicted of committing. Rather, petitioner claims his due process rights were violated because in rendering its sentencing decision, the state trial judge exhibited bias against him and improperly relied on unsubstantiated information, which petitioner had no opportunity to rebut, regarding threats purportedly made by petitioner to one of his attorneys.

Petitioner is unable to prevail on his claim that the trial court improperly considered "unsubstantiated and unreliable information," apparently about threats purportedly made by him to one of his attorneys to which he "was never given the opportunity" to respond. As discussed above in addressing petitioner's ineffective assistance of counsel claims alleged in Ground Two, *see supra* pp. 11-12, there is no

23

factual basis for this claim. The record demonstrates that petitioner was given an opportunity at a hearing held on October 26, 1999 to respond to and challenge the factual accuracy of the attorney's allegations about the threats made by petitioner. Moreover, contrary to petitioner's contention, *see supra* pp. 15-18, it is clear from the transcript of the sentencing hearing that the information disclosed to the court by defense attorneys in support of their requests to withdraw from the case played no part in the trial court's sentencing determination.

Petitioner also has not demonstrated there is any merit to his claim that the trial court was biased against him or had predetermined his sentence. In support of this claim, petitioner cites only the following excerpts from the transcript of the sentencing hearing as evidence indicating "the bias of this particular judge:" (1) the portion of the transcript wherein the judge "seemed to be particularly surprised that the police officer [who testified in the case] had not contributed anything to the victim impact statement" (Doc. 6, Tr. 384); and (2) the portion of the transcript wherein the judge stated, "[i]n my opinion you lied to the police" (*id.,* Tr. 392). (*See* Doc. 1, Memorandum In Support Of Application, pp. 16-17). Contrary to petitioner's contention, the transcript of the sentencing hearing does not reflect any bias or prejudice on the part of the trial judge. First, when defense counsel noted at the hearing that the police officer who testified in the cases "did not have a response when asked if he wanted to speak on the case through the victim impact statement," the trial court merely asked counsel to confirm that the police officer "did not respond" without expressing any outrage, concern or particular "surprise" over that fact. Second, the court's statement of its opinion that petitioner had lied to the police does not appear to have arisen from any personal feelings about, or animosity against, petitioner. Rather, upon review of the entire transcript, it appears the court's opinion was formed on the bases of "watching this trial twice," and assessing petitioner's credibility after hearing petitioner's own testimony at both trials as well as other witnesses' testimony. (*See* Doc. 6, Tr. 392-93).

Accordingly, in sum, the Court concludes (1) petitioner's state-law claim challenging the adequacy of the trial court's statutory findings in support of sentencing petitioner to more than the minimum prison term is not cognizable in this federal habeas corpus proceeding; and (2) upon de novo review of petitioner's remaining constitutional claim, petitioner has not demonstrated that the trial court violated due process in imposing a seven (7) year prison sentence, which fell within the statutory maximum. Indeed, upon review of the entire trial transcript, it appears the sentencing decision was reasonable in light of the court's findings on the record, which were supported by the evidence presented at trial, about the seriousness of the felonious assault offense in which

24

the victim was hit by petitioner with a pole three times on the head; petitioner's intention reflecting that it was not "a spur of the moment situation," but rather a deliberate act in which petitioner "sought [the victim] out;" and petitioner's lack of remorse. Therefore, petitioner is not entitled to habeas corpus relief based on the claims alleged in Ground Three challenging the seven (7) year sentence that was imposed for the felonious assault offense petitioner was convicted of having committed.

### C. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Four Challenging The Jury Instructions Given At Trial

In Ground Four of the petition, petitioner argues that the trial court erred when (1) it failed to give jury instructions on the "lesser-included offense" of aggravated assault; and (2) it gave improper instructions in light of its initial "legal finding," which it subsequently changed at sentencing, as to whether a "deadly weapon" had been used by petitioner. (Doc. 1, p. 6; Memorandum In Support Of Application, pp. 18-19). The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing the merits of petitioner's jury instruction claim, rejected it in one sentence, stating as its sole reason for overruling the assignment of error that "the trial court gave the jury instruction that Felton requested." (Doc. 3, Ex. 5, p. 2).

As an initial matter, to the extent petitioner claims he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law on the giving of jury instructions, he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding. *See supra* pp. 5, 23. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. at 41.

Because respondent has not asserted a waiver defense stemming from petitioner's procedural default in failing to raise his jury instruction claim as a federal constitutional issue to the state appellate courts, *see supra* pp. 22-23, the Court will assume that petitioner has properly presented a federal due process issue that may addressed based on the facts underlying his state-law claim.

It is well-settled under Supreme Court case-law that errors in jury instructions in a state criminal trial generally are not reviewable in a federal habeas corpus proceeding

unless they deprived the petitioner of a fundamentally fair trial and due process of law. *See Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *see also Estelle v. McGuire,* 502 U.S. 62, 72 (1991).  Before a federal court may overturn a state conviction based on an error in the jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten,* 414 U.S. 141, 146 (1973).  Therefore, the question on federal habeas review of a state conviction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle,* 502 U.S. at 72 (quoting *Cupp,* 414 U.S. at 147); *see also Henderson,* 431 U.S. at 154.   The Supreme Court has clearly established that in answering this question, the instruction must "not be judged in artificial isolation," but rather must be considered in the context of the instructions as a whole and the trial record.  *Cupp,* 414 U.S. at 146-47; *see also Estelle,* 502 U.S. at 72. In addition, if the challenged instruction is ambiguous, the inquiry turns on whether a reasonable likelihood exists that the jury applied the instruction in a way that violates the Constitution.  *Estelle,* 502 U.S. at 72 (quoting *Boyde v. California,* 494 U.S. 370, 380 (1990)).

Petitioner first argues that the trial court made a "legal finding" that the State had not proven petitioner had used a "deadly weapon" because it failed to instruct the jury regarding "deadly force." (Doc. 1, p. 6; Memorandum In Support of Application, pp. 18-19).  He alleges that the court erred by changing its "legal conclusion" at sentencing, when it held that petitioner had used a "deadly weapon." (*Id.*).  Petitioner contends that in light of this change in the court's "legal conclusion," the jury instructions given on self-defense were incorrect because there then should have been an instruction on his duty to retreat as requested by the State at trial.  Petitioner claims if the "proper instructions (including the duty to retreat)" had been given, his trial counsel "would have had to change his strategy and argue for aggravated assault as opposed to self-defense."  (*Id., Memorandum In Support Of Application, p. 19).

Upon review of the jury instructions that were given at trial, it appears clear that the trial court did not make an initial legal finding, as petitioner contends, that the State had failed to present enough evidence to raise a jury issue as to whether or not petitioner had used a "deadly weapon."  The judge expressly instructed the jury that in order to find petitioner guilty of the offense of felonious assault, it had to find that petitioner "knowingly caused or attempted to cause physical harm to [the victim] *by means of a deadly weapon or dangerous ordnance, to wit: A bludgeon, as defined in Section 2323.11 of the Revised Code. . . .*" (Doc. 6, Tr. 365) (emphasis added).  The transcript submitted

to this Court does not include the jury instructions that were given on self-defense, which were apparently requested by petitioner's counsel and which, according to petitioner, excluded instructions requested by the State on petitioner's duty to retreat.  As the state court found, the court gave the instructions that had been requested by petitioner.  The Court rejects petitioner's argument that he would have changed his defense strategy if the instructions requested by the State on the duty to retreat had been given.  The entire argument lacks any basis in fact because such instructions in the State's favor apparently were not given.  Moreover, contrary to petitioner's position, the issue of whether a "deadly weapon" had been used by petitioner was not decided by the judge as a matter of law in petitioner's favor, but rather remained a question for the jury to decide.

Petitioner also claims that the trial court should have instructed the jury on the "lesser included offense" of aggravated assault. (Doc. 1, p. 6; Memorandum In Support Of Application, pp. 18-19).  The United States Supreme Court held in *Beck v. Alabama,* 447 U.S. 625 (1980), that a defendant in a capital murder case has a constitutional right to have the jury instructed on a lesser included offense in certain situations.  *Beck,* 447 U.S. at 638.  When a jury is given only two options, "not guilty" and "guilty of capital murder," the risk that the jury will convict when it has reasonable doubt is too great; therefore, in that limited context, a lesser included non-capital offense instruction is required when there is evidence to support it.  *Id.*  The Court in *Beck* expressly declined to decide "whether the Due Process Clause would require the giving of such instruction in a non-capital case." *Id.* at 638 n.7.  To date, the Supreme Court has not held that due process requires the giving of a lesser included offense instruction in a non-capital case. *See Scott v. Elo,* 302 F.3d 598, 606 (6th Cir. 2002), *cert. denied,* 123 S.Ct. 1272 (2003); *see also Samu v. Elo,* 14 Fed.Appx. 477, 479 (6th Cir. July 9, 2001) (per curiam) (not published in Federal Reporter); *Dickerson v. Dormire,* 2 Fed.Appx. 695, 696 (8th Cir. Mar. 20, 2001) (per curiam) (not published in Federal Reporter); *Robinson v. North Carolina Attorney General,* 238 F.3d 414 (table), No. 99-7530, 2000 WL 1793060, at **1 (4th Cir. Dec. 7, 2000) (per curiam) (unpublished); *Rodgers v. Stine,* 73 F.Supp.2d 778, 784 (E.D. Mich. 1999).

In 1990, the United States Court of Appeals for the Sixth Circuit addressed this issue in *Bagby v. Sowders,* 894 F.2d 792 (6th Cir.) (en banc), *cert. denied,* 496 U.S. 929 (1990).  The court refused to extend *Beck* to the non-capital context on federal habeas corpus review of a state conviction, reasoning as follows:

It appears to us that the Supreme Court's opinion in *Beck* is grounded upon Eighth Amendment concerns, rather than those arising from the Due Process

Clause of the Fourteenth Amendment. If we are correct in that assessment, then we are not required to extend *Beck* to noncapital cases. Instead, we must determine whether the error asserted by Bagby is of the character or magnitude which should be cognizable on collateral attack. Is the failure to instruct on lesser included offenses in noncapital cases such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with rudimentary demands of fair procedure? . . . Experience tells us that it is not.

Our view, that it is not an error of such character and magnitude to be cognizable in federal habeas corpus review, is shared by a majority of the circuits. . . .

*Bagby,* 894 F.2d at 796-97 (citations omitted). The court postulated it was "conceivable" that claims such as petitioner's might be cognizable on federal habeas review where "a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Id.* at 795. The court emphasized, however, such occasions would occur only in the "most unusual circumstances," such as where the failure to give the instruction likely resulted in the conviction of an innocent person, because "it is not the function of a federal habeas court to correct errors in state law" and because the conclusion of the state's highest court that a defendant's request for a lesser included offense instruction is not warranted by the evidence elicited at trial "is axiomatically correct, as a matter of state law." *Id.*; *see also Todd v. Stegal,* 40 Fed.Appx. 25, 28 (6th Cir. Apr. 12, 2002), *cert. denied,* 537 U.S. 981 (2002); *Johnson v. Abramajtys,* 951 F.2d 349 (table), No. 91-1465, 1991 WL 270829, at **9 (6th Cir. Dec. 17, 1991) (unpublished).

Here, petitioner has not shown that this case involves "most unusual circumstances," where a fundamental miscarriage of justice has resulted from the arbitrary and unsupportable refusal of the trial court to give a lesser-included offense instruction, which was not even requested by defense counsel, in clear defiance of state law. This is not the unusual case contemplated by *Bagby* where a failure to give instructions on a lesser-included offense amounted to a fundamental miscarriage of justice that was likely to have resulted in the conviction of an innocent person. *See Bagby,* 894 F.2d at 795; *see also Scott,* 302 F.3d at 606; *Rodgers,* 73 F.Supp.2d at 785.

Accordingly, in sum, this Court concludes: (1) to the extent petitioner alleges in Ground Four of the petition that the trial court erred under state law in the giving of the

jury instructions, his claim is not cognizable in this federal habeas corpus proceeding; and (2) in any event, petitioner has not shown he is entitled to habeas corpus relief based on the merits of any claim alleged in Ground Four that his constitutional rights were violated by the trial court with respect to the jury instructions that were given at his state trial.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to the "weight of evidence" claim alleged in Ground One, which this Court has concluded is waived and thus barred from review on procedural grounds, because "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000). In addition, for the reasons given in the opinion alternatively rejecting petitioner's claim as non-cognizable in this federal habeas corpus proceeding, *see supra* p. 5, the Court further concludes under the second prong of *Slack*'s two-part standard that "jurists of reason" would not find it debatable whether the procedurally-defaulted claim alleged in Ground One states a viable constitutional claim. *Id.* at 484. Finally, it is RECOMMENDED that a certificate of appealability should not issue with respect to petitioner's remaining claims of error alleged in Grounds Two through Four, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on any of these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  10/16/03                              s/Timothy S. Hogan
          cbc                                Timothy S. Hogan
                                             United States Magistrate Judge

P:\TSH\Law Clerks\01cv488R&R.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Herb L. Felton,
      Petitioner,

                                Case No. C-1-01-488

         v.                          (Spiegel, J.; Hogan, M.J.)

James Haviland,
      Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).